IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARANDA TIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-1205 |
| | ) | |
| CALVARY UNITED | ) | Judge Campbell |
| METHODIST CHURCH, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Maranda Tibbs, by and through undersigned counsel, does hereby file this Response to the Defendant's Motion for Summary Judgment and Memorandum of Law. (Docket Entry Nos. 24 & 25).

**I.  INTRODUCTION.**

This is an age discrimination and race discrimination action brought by Plaintiff Maranda Tibbs ("Plaintiff") as a result of her termination by Defendant Calvary United Methodist Church while employed as a teacher's assistant at the Calvary Young Children's School (both collectively referred to as "Defendant" or "Calvary"). The race discrimination action is brought under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and codified at 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981a. The separate claim of age discrimination is brought pursuant to the Age Discrimination in Employment Act ("ADEA"), codified at 29 U.S.C. § 621, *et seq*.

The parties have agreed that jurisdiction and venue are proper in this Court. (See, Case

1

Management Conference Order, Docket Entry No. 16, p. 1).

## II. STATEMENT OF FACTS.

Plaintiff is a 53 year old African American female who started employment at Defendant Calvary in March 1989. She worked at Defendant Calvary as a teacher's assistant. During her employment at Defendant Calvary, Plaintiff worked in most of the different classrooms, from the nursery to the four-year olds. During her tenure at Defendant Calvary, Plaintiff was never disciplined or written-up for poor job performance.

In November 2007, Sharon Golden was named the new director at Defendant Calvary. In the spring of 2008, and as a result of mandates from the board of directors as to classroom changes, a number of teaching re-assignments were to be implemented at Defendant Calvary for the school year 2008/2009. Plaintiff Tibbs was moved a total of three times, first from the nursery where she was an assistant teacher in 2007/2008, to the four-year old class, then from the four-year old class to the three-year olds, and finally to the two-year old class. The last assignment paired Plaintiff with Kimberly Hommel, who was to be the lead teacher in the two-year class for the 2008/2009 school year.

On July 29, 2008, Ms. Hommel learned from Ms. Golden for the first time that she was no longer assigned to the four-year old class as originally planned, but that she had been assigned to the two-year old class. Apparently, and according to Kelly Harper, Ms. Hommel was upset about working with the younger age group. Ms. Harper, who was an assistant teacher, suggested to Ms. Hommel that she go and discuss her concerns with Ms. Golden. Ms. Tibbs was present, and told Ms. Hommel she would help her in any way with the two-year old class, such as changing diapers, etc. Ms. Tibbs went with Ms. Hommel to speak with Ms. Golden about the

2

classroom change on July 29.

As a result of the meeting on July 29, 2008, Plaintiff was notified later that afternoon by Ms. Golden that she had been terminated from employment at Defendant Calvary. The reason given for the termination was "insubordination" by the Plaintiff. Ms. Golden claimed that Plaintiff yelled at her during the meeting as to the change in the classroom assignment, and was very disrespectful.

As demonstrated herein, Plaintiff contends the termination was improperly motivated in whole, or in part, based on her age and/or race in violation of the ADEA and Title VII.

**III.  SUMMARY JUDGMENT STANDARD.**

To prevail on a Rule 56 motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir. 2001). To determine if the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in a light most favorable to the non-moving party. McLean v. 988011 Ontario , Ltd., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matter asserted, 'but to determine whether there is a genuine issue for trial.'" Little Caeser Enters, Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports the complaint. Liberty Lobby, 477 U.S. at 249-250. The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. Id., at 255.

To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003). "A genuine dispute between the parties on an issue of material facts must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 431 (6th Cir. 1999). A "genuine issue of material fact" is one which, if proven at trial, would result in a reasonable jury finding for the non-moving party. Doren v. Battle Creek Health Systems, 187 F.3d 595, 597 (6th Cir. 1999).

IV. ARGUMENT.

A. The Memo and Testimony of Hedy Morrison.

Carolyn "Hedy" Morrison was a teacher's assistant at Defendant Calvary in 2008. Ms. Morrison did not work during the summer session, but testified that she was at Calvary on July 29, 2008 in the "resource" room which is next door to Sharon Golden's office when she overheard the conversation between Ms. Golden, Kimberly Hommel and Plaintiff.

Ms. Morrison testified in part:

Q. Did Maranda ever say anything to Sharon Golden that sounded to you like insubordination or disrespect or anything like that?

A. **No. I thought Sharon was very disrespectful to Maranda.** She [Golden] told her that she didn't have a degree. Well, duh. She was an assistant teacher. All she was asking to be was an assistant teacher. So the degree didn't even factor in. I did feel like that was very unnecessary to point out that Maranda didn't even have a degree, like it was degrading not to even have a degree.

4

(Deposition of Carolyn "Hedy" Morrison, p. 27, ln. 15 - 25; Exhibit No. 1).

Defendant Calvary seeks to exclude the statement by Ms. Morrison attached as Exhibit No. 1 to her deposition. Defendant Calvary has not cited any authority which would prohibit the Court from considering the statement (or her testimony) as to what she overheard in the meeting which formed the basis of Plaintiff's termination. Even though Ms. Morrison may have left the resource room prior to the conclusion of the meeting between Ms. Golden, Ms. Hommel and Plaintiff, that fact should simply go the weight of her testimony, not the admissibility.

In addition, the testimony of Ms. Morrison corroborates the testimony of Ms. Tibbs, who denied that she was insubordinate or disrespectful to Ms. Golden during the meeting. (See, Deposition of Plaintiff, p. 114, ln. 17 - 23). See Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 411 (6th Cir. 2008) (district court erred when in failed to properly consider a witness who testified the plaintiff did not utter a racial slur which supposedly led to her termination.).

The statement and testimony of Ms. Morrison should be considered by the Court, since it creates a genuine issue of material fact as to whether Plaintiff was "insubordinate" to Ms. Golden during the July 29, 2008 meeting, and whether her termination was legitimately based on truthful information.[1]

    **B.**    **Plaintiff's Claim of Age Discrimination.**

        **1.**    **The ADEA case should not be dismissed under the Gross decision.**

---

[1] The actions during the meeting on July 29, 2008 appear to be central to the issue of whether Plaintiff was terminated for an improper motive, since Ms. Golden testified that any alleged prior verbal or written warnings issued to the Plaintiff for poor job performance did not cause her termination. (See, Deposition of Golden, p. 18, ln. 4 -6; ln. 18 - 21; p. 20, ln. 6 - 9).

5

In this action, Defendant contends that Plaintiff cannot successfully pursue a cause of action for age discrimination under the ADEA, while at the same time alleging a cause of action for race discrimination, due to the Supreme Court's holding in Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2352 (2009) ("A plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor).[2]

Defendant relies on Whitaker v. TVA Board of Directors, unpublished, No. 3:08-1225, 2010 WL 1493899 (M.D. Tenn., 4/14/01), along with separate decisions from the Middle District of Georgia, and Northern District of Alabama.[3] Plaintiff submits that under the facts of this case, the Court may consider the Plaintiff's post-Gross claim of age discrimination, along with the action for race discrimination.

In Barry L. Bartlett v. Robert M. Gates, Sec. Of Defense, unpublished, 09-3823 (6th Cir. Nov. 15, 2010) (copy attached), the Sixth Circuit reversed summary judgment as to companion claims of age and sex discrimination. "Because Plaintiff has established a prima facie case of age and sex discrimination in violation of Title VII and the ADEA, and because genuine issues of material fact exist with respect to pretext, we **REVERSE** the district court's grant of summary judgment in favor of Defendant and **REMAND** for trial." (Bartlett v. Gates, p. 15).

---

[2] Gross does state that an ADEA claim is the only remedy to the exclusion of all other claims of discrimination. Gross simply states that a "claim 'cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process *and had a determinative influence on the outcome*.'" Citing Hazen Paper Co. V. Biggins, 507 U.S. 604, 610 (1993) (italics in original).

[3] Huff v. Power Partners, Inc., No. 3:08-52, 2010 WL 797201 (M.D. Ga., 3/4/10), and Culver v. Birmingham Board of Education, 646 F.Supp. 2nd 1272 (N.D. Ala. 2009).

## 2. There is direct evidence of age discrimination under the ADEA.

If the Plaintiff is allowed to go forward with her claim under the ADEA, it can be proven by either direct evidence of discrimination, or circumstantial evidence that age was a motive for the wrongful termination. Mitchell v. Vanderbilt University, 389 F.3d 177, 181 (6th Cir. 2004).

Plaintiff Tibbs contends that statements made by Sharon Golden prior to her termination may be considered by the trier of fact as direct evidence of age discrimination. In a meeting in April 2008 while discussing with Ms. Golden the assignment to the four-year old class, Plaintiff testified Ms. Golden stated, "the younger teachers probably has got more energy and more ... flexible with working with younger children." (Deposition of Plaintiff, p. 92, ln. 5 - 14).

Plaintiff also testified about another age-related statement:

> And then with my age, ... she (Sharon Golden) was saying ... your back would be better if you work with the older kids. But here again, my back was fine. But she was looking – if she was looking out for the care of my back, <u>which she was saying she was because of my age and I was older</u>, it would be less bending and lifting. But then also she decided to put me in a two-year old classroom where there is more bending and lifting.

(Deposition of Plaintiff, p. 35, ln. 18 - p. 36, ln. 2) (emphasis supplied).

Discriminatory remarks by decisionmakers (such as Ms. Golden) who exert a meaningful role in the decisionmaking process generally constitute direct evidence of discrimination. See, DiCarlo v. Potter, 358 F.3d 408, 417 (6th Cir. 2004) (Direct evidence of age discrimination shown where the supervisor told the plaintiff that he was "'no spring chicken' and that he would never be a supervisor at the postal facility because of his age."). Also see, Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 354 (6th Cir. 1998) ("In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker.").

7

Plaintiff contends the age-related statements attributed to Ms. Golden that she "was older" and that the "younger teacher probably has got more energy" are sufficient proof of direct evidence of discrimination. Direct evidence of discrimination is proof that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc). Also see Gross v. FBL Financial Services, supra, 129 S. Ct. at 2351, fn.4 ("There is no heightened evidentiary requirement for ADEA plaintiffs to satisfy their burden of persuasion that age was the 'but-for' cause of their employer's adverse action.").

### 3. There is sufficient circumstantial evidence of age discrimination.

In the post-Gross era, it appears the Sixth Circuit continues to apply the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792 (1973) to circumstantial evidence claims brought under the ADEA. See, Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 264, fn. 1 (6th Cir. 2010) ("*McDonnell Douglas* framework may still be used to analyze ADEA claim based on circumstantial evidence."). Age-related statements of a corporate vice-president "may have 'played a role' in the decision to terminate the plaintiff" and the evidence "could 'properly be used to build a circumstantial case of discrimination.'" Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998).

Defendant Calvary concedes for purposes of summary judgment that Plaintiff has satisfied a prima facie case of age discrimination. (Defendant's Memorandum of Law, Docket Entry No. 25, p. 18). Defendant Calvary argues in its brief that it "has articulated a legitimate, nondiscriminatory reason for Tibb's termination on July 29, 2008: her insubordinate behavior towards her supervisor. Id. As the Defendant points out, once this happens the burden of

8

production shifts back to the employee to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

A plaintiff may demonstrate pretext by showing that an employer's stated reason for an adverse employment action either "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." White, supra, 533 F.3d at 393. Discriminatory remarks may not only constitute direct evidence of discrimination, the statements may also serve as probative evidence of pretext. See, Risch v. Royal Oak, 581 F.3d 383, 393 (6th Cir. 2009). There was no basis in fact to support the Defendant's allegation that Ms. Tibbs was insubordinate to Sharon Golden on July 29, 2008, but even if there was reliable proof, that reason standing alone was insufficient to explain the termination based on other facts in the case.

First, there is a genuine issue of material fact that Ms. Tibbs was "insubordinate" to Sharon Golden on July 29, 2008. As previously noted, Plaintiff Tibbs denied that she was hostile, abusive or insubordinate to Ms. Golden during the July 29 meeting, but that she only went to the meeting to support her co-worker, Kimberly Hommel. (Deposition of Plaintiff, p. 130, ln. 5 - 7). Plaintiff testified that she did not raise her voice at Ms. Golden, but in fact, Ms. Golden yelled at her. (Deposition of Plaintiff, p. 120, ln. 4 - 11). The testimony of Plaintiff is corroborated by Hedy Morrison, who was next door in the resource room, heard most of the conversation, and concluded from what she heard that Plaintiff was not hostile, abusive or insubordinate. Ms. Morrison testified that it was Ms. Golden who was "very disrespectful" to the Plaintiff, and at one point pounded her fist on the table. (Deposition of Morrison, p. 27, ln. 18 - 19).

9

Second, there is proof in the record that a younger, Caucasian female teaching assistant (Haile Hunt) was complained about by a parent for engaging in "promiscuous" behavior with her boyfriend in the parking lot. (Deposition of Plaintiff, pp. 73; 75; 76). Ms. Golden testified that while the parent "did not name a name" she assumed that "it more than likely would have been Hailee...." (Deposition of Golden, pp. 136 - 137). Apparently, the activity in the parking lot consisted of "kissing and hugging and public displays of affection she didn't want her child to see." (Id., p. 137, ln. 17 - 21). Ms. Golden failed or refused to discuss the matter with Ms. Hunt. (Id., p. 138, ln. 5 - 6). Instead, Ms. Golden testified that she "made a really cute flyer to cease the behavior." (Id., pp. 136-137).

The Defendant's stated reason of insubordination from the July 29 meeting has no basis in fact, but if it does, the explanation is insufficient to justify Plaintiff's termination so that summary judgment should be denied as to the claim of age discrimination under the ADEA.

    **C.**     **Plaintiff's Claim of Race Discrimination under Title VII.**

In this action, Plaintiff concedes for purposes of summary judgment there is insufficient direct evidence to support a claim of race discrimination under Title VII. However, Plaintiff submits there is sufficient circumstantial evidence of race discrimination so as to create a genuine issue of material fact to deny the Defendant's motion for summary judgment.

To establish a prima facie case of race discrimination, a plaintiff must prove that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." DiCarlo v. Potter, supra, 358 F.3d at 415. The burden as to establishing a prima facie case is not

"onerous." Martin v. Toledo Cardiology Consultants, Inc., supra, 548 F.3d at 412. It appears the Defendant concedes for purposes of summary judgment that the four separate elements to establish a prima facie case of race discrimination have been satisfied by the Plaintiff, even though Defendant contends "Tibbs was not treated differently than any employees outside the protected class." (Defendant's Memorandum of Law, p. 20).[4]

Since the Plaintiff has established a prima facie case of race discrimination, the burden of production shifts to Defendant to prove a "legitimate, nondiscriminatory reason" for its employment action. After that, the burden of production shifts back to the Plaintiff to establish that the stated reasons offered by the Defendant "are a pretext for race discrimination." (Defendant's Memorandum of Law, p. 22).

"Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

In this action, Plaintiff submits there are a number of reasons established in the record which supports proof by a preponderance of the evidence that Plaintiff was treated less favorably then her similarly-situated Caucasian employees, so that a genuine issue of material fact exist to

---

[4] Plaintiff was replaced by Carla Gifford, a younger, Caucasian female, for the 2009/2010 school year. (Deposition of Golden, p. 134, ln. 15 - 21). Since the fourth prong is in written in the disjunctive, Plaintiff will not address Defendant's argument at this stage as to whether she was "treated differently" than the other similarly-situated Caucasian teachers at Calvary. See Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002) (a plaintiff must prove one or the other to satisfy the fourth prong for a prima facie case.).

11

preclude summary judgment on race discrimination.

First, Plaintiff points to the harsh disparity in discipline as to her immediate termination on July 29, 2008 for alleged "insubordination," while other similarly-situated Caucasian employees who engaged in similar conduct were either not disciplined, or if they were, received punishment far less than termination. In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, the plaintiff and the proposed comparator must have engaged in acts of "comparable seriousness." Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002).

Some examples are as follows:

1. In a memo to Laura McCluney and Lynn Short dated March 6, 2009, Sharon Golden writes:

   I would like to take a few moments to let you know how very disappointed I am in your behavior this morning. Your actions caused such turmoil up and down the hallways, and on such an important day, it is just appalling to think you would act in such an unprofessional and unethical manner. Not only did you (sic) behavior affect the staff it was overheard by our assessors, not a great way to start this crucial day.

(Affidavit of David Cooper, Exhibit E).

2. I another memo from Ms. Golden dated August 4, 2010 about Lynn Short, she writes:

   Lynn Short called to do her 2 week FMLA call in and I spoke to her about the board's decision to expand the Zebra room to 12 to accommodate 3 siblings in the Pandas and 1 church member in the Pandas. Her responses were:

   • This is ludicrous, 12 is too many
   • The room will be chaotic
   • You are asking for trouble; kids (sic) into things
   • It just won't work

(Affidavit of David Cooper, Exhibit G).

12

3. In a separate memo dated August 13, 2010, Ms. Golden writes about a confrontation she had with Lynn Short, Amy Erickson, and Laura McCluney as to staffing and classroom size. She stated:

"Lynn Short, Amy Erickson and Laura McCluney were in the classroom. The tone and attitude in the conversation that followed was <u>very hostile</u>, <u>insubordinate</u> and <u>unprofessional</u>."

(Affidavit of David Cooper, Exhibit H) (emphasis supplied).

The actions (or inactions) of Sharon Golden in March 2009 and August 2010 as to these other Caucasian employees indicate that unprofessional, and even hostile and insubordinate behavior, was conveniently ignored by Ms. Golden as evidenced by the fact that Lynn Short, Amy Erickson and Laura McCluney were all offered the opportunity to continue employment with Calvary for the 2010/2011 school year.[5]

Second, Plaintiff was required to provide a doctor's excuse from her physician in February 2008 when she returned to work, even though she did not request to return to work at Calvary on any type of light-duty restrictions. (Deposition of Plaintiff, p. 58, ln. 1 -15). Plaintiff has established proof in the record that three white employees, Brenda Farmer, Lori Murray and Kaye Stevens, all missed three (3) or more consecutive days from work during the same school year (2007/2008), yet none of them were required by Ms. Golden to furnish a doctor's excuse. (Declaration of Sharon Golden, Exhibit C).

Third, Sharon Golden testified that even though "she gave precedent to those with seniority" as to the new classroom assignments for the 2008/2009 school year, Plaintiff was not

---

[5] Laura McCluney later resigned from employment, even though she was offered a teaching position for the 2010/2011 school year. (Affidavit of Laura McCluney, ¶ 3).

13

credited for the almost 20 years of service to the school. (Deposition of Golden, p. 39, ln. 23 - p. 40, ln. 3; Exhibit No. 6). Ms. Golden testified that Plaintiff had seniority over five (5) assistant teachers at Calvary: (1) Emily Tomlin; (2) Lori Murray; (3) Lindsey Glenn; (4) Kelly Harper; and (5) Rebecca Darnell. (Deposition of Golden, p. 41, ln. 14 - p. 42, ln. 6). Ms. Tibbs testified that during her meeting with Ms. Golden, it was explained to her that she was being assigned to the four-year old classroom with Kimberly Hommel, and that she did not have "a choice" in the classroom assignment. (Deposition of Plaintiff, p. 25, ln. 1 - 4).

Fourth, Sharon Golden testified that prior to Plaintiff's termination, she was never verbally warned or reprimanded as a result of any poor job performance. (Deposition of Golden, p. 18, ln. 4 - 6). Ms. Golden testified that she "could not recall" ever issuing to her a written warning. (Deposition of Golden, p. 18, ln. 18 - 21).[6] Lynn Short, another Caucasian assistant teacher at Calvary, was written up for several violations, including mishandling a child while taking his temperature, improperly taking the child's temperature rectally, and improperly warming a bottle. (Deposition of Plaintiff, p. 46, ln. 1 - 15; p. 49, ln. 6 -7). Ms. Golden testified there was progressive discipline for employees at Calvary. (Deposition of Golden, p. 110, ln. 12 - 25). Even though the Defendant had a procedure in place for progressive discipline, Plaintiff was terminated for alleged "insubordination" while her similarly-situated, white employee (Short) was never terminated even though she was written-up, and later on engaged in what was considered to be insubordinate conduct.[7]

---

[6] The three (3) page Declaration of Sharon Golden does not include any writeups as to the Plaintiff, so it is presumed none exist.

[7] Ms. Golden testified she placed Ms. Short on a performance improvement plan in July 2008, which was "probably 15 days." (Deposition of Golden, p. 205, ln. 18 - 23).

14

Fifth, the incident which involved Haile Hunt, a Caucasian assistant teacher, who was complained about by a parent for having engaged in inappropriate conduct with her boyfriend in the parking lot was not met with any specific discipline, but simply a "cute flyer" to the entire staff asking that the behavior cease.

Sixth, Plaintiff testified that her classroom assignment for the school year 2008/2009 was changed three (3) times by Ms. Golden, even though she had seniority over most of her similarly-situated, white assistant teachers. Plaintiff testified that she was the only assistant teacher at Calvary who was required to go through the different classroom changes, as opposed to the white assistant teachers were not required to go through number of reassignments.

Seventh, Ms. Tibbs testified that during a staff meeting on July 23, 2008, Linda Scott, a Caucasian lead teacher, was asked by Sharon Golden who she wanted to be paired with for the 2008/2009 school year. Ms. Scott stated to Ms. Golden, "I don't know, but I sure as hell don't want to work with Dean [Marold]." Ms. Golden replied and stated "okay." (Deposition of Plaintiff, p. 158, ln. 5 - 21).[8] Plaintiff testified that Ms. Scott was not disciplined for the statement. (Deposition of Plaintiff, p. 158, ln. 21 - 23).

Based on the proof in this action, Plaintiff believes that genuine issues of material fact exist as to whether she was treated differently, and more harshly, than her similarly-situated Caucasian employees so as to establish a claim of race discrimination under Title VII.

### D. Plaintiff's Mixed-Motive Claim of Race Discrimination under Title VII.

---

[8] Conveniently, Ms. Golden does not recall hearing the statement by Ms. Scott. (Deposition of Golden, p. 73, ln. 21 - 25). The statement was also heard by Kaye Stevens and Hedy Morrison. (Deposition of Kaye Stevens, p. 40, ln. 11 - 15; p. 41, ln. 6 - 11) (Deposition of Hedy Morrison, p. 48, ln. 11 - p. 49, ln. 8).

In the alternative, and in the event the Court determines that Plaintiff can not establish a single-motive claim of race discrimination, Plaintiff submits the evidence can support a mixed-motive claim of race discrimination under Title VII. Disparate-treatment claims brought under Title VII are characterized as either single-motive claims, <u>i.e.</u>, when an illegitimate reason motivated an employment decision, or mixed-motive claims, when "both legitimate and illegitimate reasons motivated the decision." See, <u>Desert Palace v. Costa</u>, 539 U.S. 90, 93 (2003). A plaintiff may raise a "mixed-motive Title VII claim by 'demonstrat[ing] that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice.'" <u>Wright v. Murray Guard, Inc.</u>, 455 F.3d 702, 711 (6th Cir. 2006) (quoting 42 U.S.C. § 2000e-2(m) (emphasis in original.). The "employer's liability will be limited to injunctive and declaratory relief and attorney fees and costs" under the Act. <u>Id</u>. A plaintiff can raise a mixed-motive claim in either the complaint, or in the response to a motion for summary judgment. <u>Spees v. James Marine, Inc.</u>, 617 F.3d 380, 390 (6th Cir. 2010).

The burden-shifting framework in *McDonnell Douglas/Burdine* does not apply to mixed-motive claims. See, <u>White v. Baxter Healthcare Corp.</u>, 533 F.3d 381, 400 (6th Cir. 2008). "A Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, national origin was a motivating factor for the defendant's adverse employment action." <u>Id</u>.

If the Court determines that the evidence presented herein does not support a single-motive claim of race discrimination, Plaintiff submits the evidence raised above in Paragraph IV.C supports a mixed-motive claim under Title VII.

16

## V. CONCLUSION.

There is proof in the record to substantiate Plaintiff's claims of age discrimination under the ADEA and race discrimination under Title VII. Defendant's motion for summary judgment should be denied.

**THE LAW OFFICE OF DAVID L. COOPER, P.C.**

BY: __**David L. Cooper**__
**DAVID L. COOPER BPR# 11445**

Third Avenue North Building
208 Third Avenue, North
Suite 300
Nashville, TN 37201
(615) 256-1008

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the **Plaintiff's Response to Defendant's Motion for Summary Judgment** has been delivered by the Court's Electronic Case Filing System to **Matthew C. Lonergan, Esq.**, at Bradley, Arant, Boult & Cummings, LLP, 1600 Division Street, Suite 700, P..O. Box 340025, Nashville, TN 37203-0025, on this __23rd__ day of December, 2010.

__David L. Cooper__
**DAVID L. COOPER**

17