IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

MARANDA TIBBS )
)
v. ) NO. 3:09-1205
) JUDGE CAMPBELL
CALVARY UNITED METHODIST CHURCH )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 24). Plaintiff alleges race discrimination under Title VII of the Civil Rights Act of 1974 ("Title VII") at 42 U.S.C. § 2000e, *et seq.* and 44 U.S.C. § 1981, and age discrimination under the Age Discrimination in Employment Act ("ADEA") at 29 U.S.C. § 621, *et seq.* For the reasons described herein Defendant's Motion for Summary Judgment with regard to Plaintiff's claims of both age discrimination and race discrimination is GRANTED.

FACTS

Maranda Tibbs is an African-American woman who was 51 years of age at the time of her termination. (Docket No. 25). She worked as an assistant teacher at Defendant Calvary United Methodist Church in its Young Children's School ("YCS") from March 1989 until July 29, 2008.

In November 2007, Sharon Golden was hired by Defendant as the director of YCS. (Docket No. 37). She was tasked with implementing certain directives at YCS, which were communicated to her by her supervisor and the YCS board of directors, and included: (1)

1

enforcement of the polices and procedures at the YCS; (2) ensuring that the YCS followed all of the National Association for the Education of Young Children ("NAEYC") accreditation standards; and (3) making sure that YCS followed the Tennessee Department of Human Services ("DHS") 3-star licensing standards. Among many of the changes Ms. Golden made at YCS, one of the significant changes included teaching assignments for the 2008-2009 school year. Consistent with NAEYC accreditation standards and DHS 3-star licensing standards, each classroom was to consist of one lead teacher and one assistant teacher. For a teacher to be a lead, he or she is required to have a Child Development Associate ("CDA"), an associate's degree, or a college degree. Consistent with these standards, YSC determined they would staff all classrooms with one lead teacher. *Id.*

When Ms. Golden began her position as director in the 2007-2008 school year, there were two classrooms both with teaching teams of two women that did not meet these standards, including the team of which Plaintiff would be a part. In making changes, Ms. Golden split up Plaintiff and Ms. Short because neither Plaintiff nor Ms. Short were qualified to be lead teachers. *Id*.

Ms. Golden approached all four women in March 2008 to discuss the changes for the 2008-2009 school year. In her deposition, Plaintiff testified her "preference" was to work with Ms. Short in the nursery, but since that was not an option, she planned to work with Ms. Kimberly Hommel. Ms. Golden slated Plaintiff and Ms. Hommel, as the lead, to work together for the 2008-2009 school year in a four-year old classroom. *Id*. Ms. Golden paired together a team comprised of Brenda Farmer and Emily Tomlin to work in the nursery for the 2008-2009 school year. *Id.*

In making classroom assignments, Ms. Golden considered a variety of factors including, but not limited to, seniority, teams that had proven to work well together, lead teacher degrees,

2

hours and/or days that would work, and parent feedback. Ms. Golden decided to keep Ms. Farmer and Ms. Tomlin together because they were a good teaching team, were nurturing, their work schedules would provide a continuity of care crucial to infants, and parents were requesting them. *Id*.

Between 2000 and 2007, under the previous director, Anne Parker, Plaintiff's classroom assignment changed at least three different times. In July 2008, YCS began receiving phone calls from parents of children who were supposed to be in the four-year old class Plaintiff and Ms. Hommel were assigned for 2008-2009, informing YCS that these children were no longer coming to YCS. Ms. Golden determined there would not be a four-year old class because not enough students were registered to meet the minimum required enrollment number. *Id*. Ms. Golden began calling people on YCS's waiting list, and as a result, YCS was able to create a class of two-year olds which Ms. Golden intended to assign to Plaintiff and Ms. Hommel. On July 29, 2008, Ms. Golden communicated this intention to Plaintiff and Ms. Hommel and further communicated that she wanted to discuss this decision with both of them. *Id*.

Plaintiff and Ms. Hommel met with Ms. Golden to discuss the changes in their classroom assignment. In her deposition, Ms. Golden states plaintiff began raising her voice and arguing she had seniority and wasn't going to be bumped again. *Id*. Plaintiff denies yelling or being insubordinate towards Ms. Golden in this meeting. Ms. Golden further discussed other options with Plaintiff and explained why they were not viable, and /or why she was not changing certain teaching assignments while trying to keep Plaintiff and Ms. Hommel together. *Id*. Ms. Golden stated Plaintiff left the meeting before it concluded. Plaintiff alleges she was crying and "rushed out of [Ms. Golden's] office before I fell apart." *Id*. Ms. Golden alleges she viewed Plaintiff's behavior as insubordinate and inappropriate, which led her to seek approval to discharge Plaintiff.

3

Plaintiff denies yelling or being insubordinate. *Id*.

STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Pennington*, 553 F.3d at 450; *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

ANALYSIS

<u>Age Discrimination</u>

Age discrimination cases under the Age Discrimination in Employment Act ("ADEA")

are analyzed under the same framework as employment discrimination cases under Title VII *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir. 2002). To establish a successful discrimination claim under the ADEA, Plaintiff must present either direct evidence of discrimination or circumstantial evidence. *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009).

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age..." 29 U.S.C. § 623(a)(1). *See also Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 410 (6th Cir. 2008).

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Abbott v. Crown Motor Co. Inc.,* 48 F.3d 537, 540-42 (6th Cir. 2003); *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id.* In *Gross v. FBL Financial Services Inc.,* the Supreme Court recently emphasized that with both direct and circumstantial evidence, the burden of persuasion remains on the Plaintiff to demonstrate " that age was the 'but-for' cause of their employer's adverse action." 129 S. Ct. 2343, 2351 n.4 (2009).

Direct Evidence

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v.*

5

*Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 153 (2000). Any discriminatory statements must come from decisionmakers to constitute evidence of discrimination. *See Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 550 (6th Cir. 2004). "Statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir. 1998). The standard used in determining if there is direct evidence of age discrimination is whether the plaintiff has proven "by a preponderance of the evidence. . . that age was the 'but-for' cause of the challenged employer decision." *Gross*, 129 S.Ct. at 2351.

Plaintiff alleges Ms. Golden made numerous age related comments including statements that the younger teachers would have more energy and be more flexible in working with young children and that Plaintiff's back would be better if she worked with older children. (Docket No. 35, p. 7).

However, Plaintiff has presented no evidence, even in light of the alleged comments above, to suggest that Defendant's decision to terminate her employment was in any way motivated by her age or that these comments were made in conjunction with Defendant's termination decision. Plaintiff has alleged no direct evidence of age discrimination and has not demonstrated that age was the 'but-for' cause of her termination.

<u>Circumstantial Evidence</u>

The Court of Appeals for the Sixth Circuit has long found the *McDonnell Douglas* framework useful in analyzing circumstantial evidence of ADEA claims and thus remains applicable law in the Sixth Circuit. To set forth a *prima facie* case of age discrimination using circumstantial evidence, a plaintiff must establish the four elements of the *McDonnell Douglas* test: (1) Plaintiff was at least forty years of age at the time of the alleged discrimination; (2)

Plaintiff was subjected to an adverse action; (3) Plaintiff was qualified for the position; and (4) Plaintiff was replaced by a younger person. *Cooly v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1329 (6th Cir. 1994). With respect to the last element, Plaintiff may also prove that similarly-situated employees not in the protected class were treated more favorably. *See McDonnell Douglas Cor. v. Green*, 411 U.S. 792, 802 (1973).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection," *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1997). After a defendant has met this burden, the plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994). The plaintiff may not simply substitute his own business judgment for that of the defendant. Rather, to survive a motion for summary judgment he must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful age-discrimination, not that other reasonable decision-makers might have retained the plaintiff. *Rowan v. Lockheed Martin Energy Systems,* 360 F.3d 544, 550 (6th Cir. 2004).

For purposes of this memorandum, the Court assumes Plaintiff has established a *prima facie* case. Defendant Calvary contends it had a legitimate, non-discriminatory reason for its employment decision to terminate Plaintiff based on her insubordination towards her supervisor, Ms. Golden. Defendant alleges Plaintiff met with her supervisor to discuss changes in the schedule about which she was unhappy, raised her voice, and walked out of the room before the meeting was concluded. (Docket No. 25). Plaintiff denies raising her voice and alleges she was crying and "rushed out of [Ms. Golden's] office before I fell apart." (Docket No. 37, p. 9). The Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered reason for

7

discharging an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). Under this rule, as long as an employer has honest belief in its proffered non-discriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Id.* at 806. An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)

The Court finds Defendant's proffered reason satisfies its burden to articulate some legitimate, non-discriminatory reason for Plaintiff's termination. The burden subsequently shifts back to Plaintiff to produce "sufficient evidence from which the jury may reasonably reject the employer's explanation." *Mazner*, 29 F.3d at 1083. Plaintiff has not come forward with sufficient age-based evidence to reject Defendant's non-discriminatory reason for her termination. The age based comments relied upon by Plaintiff are not sufficient to carry her burden because they are unconnected to her termination and do not cast doubt on the motives of the Defendant.

For the reasons stated above, Defendant's Motion for Summary Judgment (Docket No. 24) is GRANTED.

<u>Race Discrimination</u>

Plaintiff concedes there is insufficient direct evidence to support a claim of race discrimination under Title VII. (Docket No. 35, p.10), however she alleges there is sufficient circumstantial evidence of race discrimination so as to create a genuine issue of material fact. *Id.*

Title VII prohibits discrimination by an employer against any individual on the basis of race. 42 U.S.C. § 2000e-2(a).

8

Similarly, Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . .

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981 (a) and (b). The discrimination prohibited by Section 1981 includes both non-governmental discrimination and discrimination under color of State law. 42 U.S.C. § 1981 (c).

Claims brought under Section 1981 are governed by the same evidentiary framework that is applied to Title VII employment discrimination claims. *Patterson v. McLean Credit Union*, 491 U.S. 164, 185-88, 109 S.Ct. 2363, 2377-78, 105 L.Ed.2d 132 (1989); *Shaw v. Danley* 2000 WL 64945 at n.2 (6th Cir. Jan. 10, 2000). In considering circumstantial evidence of race discrimination, the framework for analyzing a Title VII claim under the basis of race uses the same four-step *McDonnell Douglas* framework as stated above for allegations of age discrimination[1]. Likewise, once a plaintiff proves his prima facie case, the burden shifts to the employee to articulate some legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.

For the purposes of this memorandum, the Court assumes Plaintiff has established a *prima facie* case. The Court uses the same framework and standard in considering Plaintiff's allegations

---

[1] Unlike age discrimination, a Plaintiff need not demonstrate race was the "but-for" cause for the adverse employment action. ("*Gross* [*v. FBL Fin. Servs.*, 129 St. Ct. at 2353] enunciated the correct standard for *ADEA claims* as whether the plaintiff has proven 'by a preponderance of the evidence...that *age* was the 'but-for' cause of the challenged employer decision." *Geiger v. Tower Automotive*, 579 F.3d 614, 641 (6th Cir. 2009))(emphasis added).

of race discrimination as with Plaintiff's allegations of age discrimination with regard to circumstantial evidence under *McDonnell Douglas*. Defendant Calvary has stated a legitimate, non-discriminatory reason for its decision to termination Plaintiff's employment. Calvary contends the decision to terminate Plaintiff was due to her insubordination towards her supervisor, Ms. Golden. Plaintiff has produced no evidence that Defendant's decision to terminate her was in any way based on her race and not based on Defendant's belief Plaintiff acted in an insubordinate manner towards Ms. Golden.

For the reasons stated above, Defendant's Motion for Summary Judgment (Docket No. 24) is GRANTED.

## CONCLUSION

For the reasons stated above Defendant's Motion for Summary Judgment with regard to Plaintiff's claims of both age discrimination and race discrimination is GRANTED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE